IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISON

STEVEN RIAD JALLOUL,
           Movant,

v.

UNITED STATES OF AMERICA,
           Respondent.

No.     3:24-CV-0438-B
         (3:19-CR-094-B)

## **RESPONSE TO MOTION UNDER 28 U.S.C. § 2255**

Respectfully submitted,

Leigha Simonton
United States Attorney

*/s/ Daniel Z. Gordon*
Daniel Z. Gordon
Assistant United States Attorney
D.C. Bar No. 1736506
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: (214) 659-8794
daniel.gordon@usdoj.gov

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ........................................................................................iv

RESPONSE TO MOTION UNDER 28 U.S.C. § 2255 ...................................... 1

1.     BACKGROUND........................................................................................ 1

     A.     Statement of Facts ............................................................... 1

         i.     Offense Conduct.............................................. 1

         ii.     Conviction and Sentencing ................................ 1

         iii.     Direct Appeal and Section 2255 Motion................... 3

     B.     Statement of the Issues ........................................................ 4

2.     STANDARD OF REVIEW........................................................................ 4

3.     ARGUMENT AND AUTHORITIES........................................................ 7

     A.     Attorney Stephen Jones played a significant role as Jalloul's sentencing counsel............................................................... 7

     B.     Ghatrehee had no conflict of interest, but even if he did, Jalloul implicitly waived such conflict, and his claim fails under the two-pronged *Strickland* test......................................................... 8

         i.     Ghatrehee had no conflict of interest. ..................... 9

         ii.     Jalloul waived any purported conflict. ................... 11

         iii.     Jalloul does not meet the two-pronged *Strickland* test. ........ 12

             a.     Restitution claims are not cognizable in Section 2255 motions, and regardless restitution orders for Title 26 tax offenses are authorized by statute. (Responsive to Jalloul's Ground 1 and 2.).......................................... 13

             b.     Ghatrehee was not ineffective for failing to lodge a frivolous objection to the PSR's calculation of relevant conduct. (Responsive to Jalloul's Grounds 1, 3, and 5.) ............................................................ 15

             c.     There is no constitutional right to counsel at a PSR interview, and therefore Ghatrehee was not ineffective for not attending. (Responsive to Jalloul's Ground 4.) ................................................................ 18

**Page**

        d.       Jones presented mitigating evidence on Jalloul's behalf at sentencing, and Ghatrehee's decision not to present mitigating evidence regarding his prior assaults fails under both *Strickland* prongs.  (Responsive to Jalloul's Grounds 6 and 7.)......................................................19

4.      CONCLUSION ..............................................................................23

CERTIFICATE OF SERVICE ............................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**                                                          **Page(s)**

*Clay v. United States*, 537 U.S. 522 (2003)............................................................. 3

*Edwards v. United States*, 523 U.S. 511 (1998) ............................................... 18

*Glover v. United States*, 531 U.S. 198 (2001) .................................................. 21

*Green v. Johnson*, 160 F.3d 1029 (5th Cir. 1998)....................................... 17, 18

*Hall v. United States*, No. 1:17-CV-517, 2021 WL 836863 (E.D. Tex. Jan. 27, 2021).....16

*Hill v. Lockhart*, 474 U.S. 52 (1985) ................................................................. 5

*Hott v. United States*, No. 4:16-CR-069-O, 2020 WL 7395384 (N.D. Tex. Dec. 17, 2020) ............................................................................................ 18

*Kitchens v. Johnson*, 190 F.3d 698 (5th Cir. 1999)......................................... 21

*Lee v. United States*, No. 3:07-CR-0289-M (02), 2015 WL 5559398 (N.D. Tex. Sept. 1, 2015)......................................................................... 13

*Lincks v. United States*, No. 3:17-CR-00017-B (18), 2021 WL 4395816 (N.D. Tex. June 8, 2021) ......................................................................... 21

*Lockhart v. Fretwell*, 506 U.S. 364 (1993) ....................................................... 6

*Massaro v. United States*, 538 U.S. 500 (2003).............................................. 5

*Miller v. Dretke*, 420 F.3d 356 (5th Cir. 2005) ............................................... 17

*Miller v. Johnson*, 200 F.3d 274 (5th Cir. 2000).............................................. 5

*Padilla v. Kentucky*, 559 U.S. 356 (2010) ........................................................ 6

*Ross v. Estelle*, 694 F.2d 1008 (5th Cir. 1983)................................................ 17

*Sealed Appellee v. Sealed Appellant*, 900 F.3d 663 (5th Cir. 2018) ....................... 9, 11, 12

*Strickland v. Washington*, 466 U.S. 668 (1984)........................................ 5, 6, 20

*United States v. Bartholomew*, 974 F.2d 39 (5th Cir. 1992)............................ 6

*United States v. Bounds*, 985 F.2d 188 (5th Cir. 1993).................................. 18

**Federal Cases, continued**                                                    **Page(s)**

*United States v. Campbell*, 552 F. App'x 339 (5th Cir. 2014) ..................................... 14, 15

*United States v. Cavitt*, 550 F.3d 430 (5th Cir. 2008) .......................................................... 7

*United States v. Cooks*, 589 F.3d 173 (5th Cir. 2009) ........................................................ 16

*United States v. Culverhouse*, 507 F.3d 888 (5th Cir. 2007) ............................................... 8

*United States v. Ewing*, 334 F. App'x 697 (5th Cir. 2009) ................................................. 18

*United States v. Frady*, 456 U.S. 152 (1982) ....................................................................... 4

*United States v. Goodley*, 183 F. App'x 419 (5th Cir. 2006) ......................................... 9, 12

*United States v. Grammas*, 376 F.3d 433 (5th Cir. 2004) .................................................. 21

*United States v. Green*, 882 F.2d 999 (5th Cir. 1989) ........................................................ 17

*United States v. Greig*, 967 F.2d 1018 (5th Cir. 1992) ........................................................ 9

*United States v. Hatten*, 167 F.3d 884 (5th Cir. 1999) ....................................................... 13

*United States v. Hinson*, 55 F.3d 632, 1995 WL 313939 (5th Cir. 1995) ......................... 10

*United States v. Hughes*, 635 F.2d 449 (5th Cir. Unit B 1981) ............................................ 6

*United States v. Jalloul*, No. 21-10434, 2022 WL 4078567 (5th Cir. Sept. 6, 2022) .... 3, 14

*United States v. Job*, 387 F. App'x 445 (5th Cir. 2010) ....................................................... 8

*United States v. Miller*, 406 F.3d 323 (5th Cir. 2005) ....................................................... 14

*United States v. Nolen*, 523 F.3d 331 (5th Cir. 2008) ....................................................... 14

*United States v. Opiyo*, No. 4:10-CR-168-A-1, 2013 WL 4804193
        (N.D. Tex. Sept. 6, 2013) .......................................................................................... 21

*United States v. Palacios*, 928 F.3d 450 (5th Cir. 2019) .................................................. 7, 8

*United States v. Potts*, 566 F.Supp.2d 525 (N.D. Tex. 2008) ............................................ 10

*United States v. Stewart*, 207 F.3d 750 (5th Cir. 2000) ....................................................... 6

*United States v. Stout*, 32 F.3d 901 (5th Cir. 1994) ............................................... 13, 14, 15

v

**Federal Cases, continued** **Page(s)**

*United States v. Williams*, 610 F.3d 271 (5th Cir. 2010)....................................16

*United States v. Woods*, 870 F.2d 285 (5th Cir. 1989) .......................................21

*Wainwright v. Torna*, 455 U.S. 586 (1982) ........................................................18

*Weaver v. Ingalls Shipbuilding, Inc.*, 282 F.3d 357 (5th Cir. 2002) ..................11


**Federal Statutes and Rules**

18 U.S.C. § 3583(d)(3) .........................................................................................14

18 U.S.C. § 3663(a)(3) .........................................................................................14

28 U.S.C. § 2255(f)(1)............................................................................................3


**Federal Sentencing Guidelines**

USSG § 1B1.3, cmt. n.9 .......................................................................................16

## RESPONSE TO MOTION UNDER 28 U.S.C. § 2255

Steven Riad Jalloul seeks to set aside his sentence under 28 U.S.C. § 2255 raising an ineffective assistance of counsel claim as it relates to one of his trial counsels, Bejan Ghatrehee.  (CV No. 1.)[1]  Jalloul's claim lacks merit.  Thus, for the reasons set out fully below, this Court should deny his motion.

## 1.    BACKGROUND

### A.    Statement of Facts

#### i.    Offense Conduct

Jalloul operated a business that prepared tax returns on behalf of taxpayers.  (PSR at 3-9.)  Between 2012 and 2018, he filed materially false federal income tax returns on behalf of his taxpayer clients by claiming deduction and credits Jalloul knew his clients were not entitled to.  (PSR at 3-9.)

#### ii.    Conviction and Sentencing

As a result of this conduct, a federal grand jury charged Jalloul with twelve counts of preparing false tax returns, in violation of 26 U.S.C. § 7206(2).  (CR No. 1.)  Jalloul entered into a plea agreement where he pled guilty to two counts of preparing false tax returns (Counts Eleven and Twelve).  (CR No. 27.)  In exchange for Jalloul's plea of guilty to the two counts, the government moved for, and the Court ordered, the dismissal of the indictment's remaining ten counts.  (CR No. 27 at 4.)  As part of his agreement,

---

[1]  "CV No. __" refers to the docket number of this Section 2255 action.  "CR No. __" refers to the docket number of the underlying criminal proceeding, *United States v. Jalloul*, 3:19-CR-094-B (N.D. Tex.).  "PSR" refers to the presentence report, which is docketed at CR No. 35-1.

Jalloul waived his right to file a direct appeal, except under a few circumstances such as ineffective-assistance-of-counsel claims, and further waived his right to collaterally attack his criminal judgment under Section 2255.  (CR No. 27 at 5-6.)

Jalloul retained attorney Bejan Ghatrehee to represent him.  (CR No. 7.) Ghatrehee represented Jalloul from his initial appearance through sentencing.  (CR Nos. 5–56.)  Jalloul hired additional counsel, attorney Stephen Jones, after his plea, but before his sentencing.  (CR No. 38.)  Jones remained Jalloul's counsel—along with Ghatrehee— through sentencing.[2]  (CR Nos. 38–56.)

Following his guilty plea, the PSR confirmed that Jalloul agreed to pay restitution "arising from all relevant conduct, not limited to that arising from the offense of conviction."  (PSR at 4.)  The PSR noted that between 2012 and 2017, Jalloul prepared and filed 10,311 tax returns with the IRS.  (PSR at 9.)  The PSR determined the actual loss amount to the IRS as $14,100,029.87.  (PSR at 9-10.)  Jalloul did not object to that calculation in the PSR.

Prior to sentencing, the probation officer filed an addendum providing notice of what conditions of supervision would be recommended, as well as the justification for special conditions of supervision.[3]  (CR No. 54-1.)  Those stated conditions included the following:

---

[2] Jalloul makes clear that his Section 2255 motion is directed solely at Ghatrehee and that "nothing in this motion is directed at attorney Stephen Jones."  (CV No. 1 at 10.)

[3] Notably, while on release pending sentencing, Jalloul was indicted on one count of making false statements to a bank, in violation of 18 U.S.C. § 1014 based on unrelated conduct.  *See United States v. Jalloul*, No. 3:20-CR-0436, Dkt. No. 10 (N.D. Tex.).  He subsequently pled guilty and was sentenced to 120 months' imprisonment in that case.  *Id.* (Dkt. Nos. 45, 47-48, 68).

7.  You must make restitution in accordance with 18 U.S.C. §§ 2248, 2259, 2264, 2327, 3663, 3663A, and 3664.

\* \* \*

16.  The defendant shall pay any remaining balance of restitution in the amount of $14,100,029.87, as set out in this Judgment.

(CR No. 54-1 at 2-3.)

At sentencing, Jalloul's attorney expressed agreement with the contents of the PSR and PSR addenda.  (CR No. 78 at 9.)  The Court sentenced Jalloul to 36 months on each count, to run consecutively.  (CR No. 57.)  The Court also ordered Jalloul to pay $14,100,029.87 in restitution as a monetary penalty and as a condition of supervised release.  (CR No. 57 at 5.)

### iii.    Direct Appeal and Section 2255 Motion

On direct appeal, Jalloul argued that the Court's restitution order exceeded the maximum statutory sentence because it was "neither authorized by the statute of conviction, nor agreed to in the plea agreement."  *United States v. Jalloul*, No. 21-10434, 2022 WL 4078567, at \*1 (5th Cir. Sept. 6, 2022) (unpublished), *cert. denied*, 143 S. Ct. 806 (2023).  The Fifth Circuit rejected both arguments and affirmed.  *Id.* at \*2.

Jalloul filed a petition for certiorari, which was denied on February 21, 2023.  (CR No. 83 at 2.)  Accordingly, his conviction became final on that date.  *See Clay v. United States*, 537 U.S. 522, 532 (2003) (holding that finality attaches when the time for seeking review expires).  Jalloul timely filed his Section 2255 motion on February 21, 2024.  (CV No. 1); *see* 28 U.S.C. § 2255(f)(1).

3

### B.    Statement of the Issues

Jalloul raises an ineffective-assistance-of counsel claim arguing that his trial counsel Bejan Ghatrehee was ineffective due to his alleged conflict of interest.  (CV No. 1 at 10.)  Jalloul contends that because of Ghatrehee's alleged conflict of interest, Ghatrehee failed to:

- "investigate the claims and defenses in the case";

- "advise Jalloul that federal law barred the government from obtaining a restitution judgment";

- "investigate the government's theory of relevant conduct";

- "attend the presentence investigation interview with Jalloul";

- "supplement or object to the presentence investigation report";

- "submit a sentencing memorandum"; and

- "present mitigating evidence at sentencing, including facts to clarify Jalloul's criminal history."

(CV No. 1 at 12-15.)

## 2.    <u>STANDARD OF REVIEW</u>

Under 28 U.S.C. § 2255, a prisoner may apply to the convicting court to vacate, set aside, or correct his conviction or sentence if it was imposed in violation of the Constitution or the laws of the United States.  A Section 2255 motion, however, "may not do service for an appeal."  *United States v. Frady*, 456 U.S. 152, 165 (1982).  After conviction and the exhaustion or waiver of all appeals, the court is "entitled to presume" that the applicant "stands fairly and finally convicted."  *Id*. at 164.

Claims that counsel was ineffective allege a constitutional violation that can be raised under Section 2255. *Massaro v. United States*, 538 U.S. 500, 504 (2003). To prevail on an ineffective-assistance-of-counsel claim, the movant must show (1) that his counsel's performance fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This standard applies regardless of whether the movant pled guilty or not guilty. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

Thus, to prevail here, Jalloul must first prove his lawyer's performance was deficient. Simply making "conclusory allegations" is insufficient. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). A movant must identify specific acts or omissions that were not the result of reasonable professional judgment. *Strickland*, 466 U.S. at 690. This "scrutiny . . . must be highly deferential" and "requires that every effort be made to eliminate the distorting effects of hindsight[.]" *Id.* at 689. This is because it is "all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission . . . was unreasonable." *Id.* The court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case" and "evaluate [that] conduct from counsel's perspective at the time." *Id.* at 689-90. To that end, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged

5

action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and citations omitted).

Second, Jalloul must prove that his lawyer's deficient performance prejudiced his case. *Id.* This requires showing that "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). There is no prejudice if the deficient performance did not "deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.* Put another way, a petitioner must prove that but for counsel's errors, "there is a reasonable probability that" the result of the proceeding would have been different. *Strickland*, 466 U.S. at 693-94; *United States v. Bartholomew*, 974 F.2d 39, 41-42 (5th Cir. 1992).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). The claim fails if the petitioner does not satisfy either the deficient-performance prong or the prejudice prong. *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000). And a court need not address both components if there is an insufficient showing on one. *Id.*

Finally, a Section 2255 motion does not automatically require a hearing. *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. Unit B 1981). "When the files and records of a case make manifest the lack of merit of a Section 2255 claim, the trial court is not required to hold an evidentiary hearing." *Id*.

3.    **ARGUMENT AND AUTHORITIES**

    A.    **Attorney Stephen Jones played a significant role as Jalloul's sentencing counsel.**

In his Section 2255 motion, Jalloul "acknowledges his guilt" and only challenges his sentence. (CV No. 1 at 10.) Indeed, by pleading guilty, Jalloul waived his right to challenge the substance of his underlying conviction: "once a guilty plea has been entered, all nonjurisdictional defects in the proceedings against a defendant are waived, and the waiver includes all claims of ineffective assistance of counsel, except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea." *United States v. Cavitt*, 550 F.3d 430, 441 (5th Cir. 2008) (internal quotations omitted). And relevant to Jalloul's Section 2255 motion, "[a] defendant waives a conflict-of-interest claim when he voluntarily pleads guilty." *United States v. Palacios*, 928 F.3d 450, 457 (5th Cir. 2019).

Jalloul's ineffective-assistance sentencing claim is directed solely at one of his attorneys Bejan Ghatrehee and not at his other counsel, Stephen Jones. (CV No. 1 at 10 ("As an initial point of clarification, nothing in this motion is directed at attorney Stephen Jones.").) However, Jones played a significant, if not principal role at Jalloul's sentencing. Jones entered his appearance after Jalloul pled guilty, but before sentencing. (*See* CR No. 38.) While Jalloul notes—and the sentencing transcript confirms—that Jones was retained "in connection with Jalloul's efforts to assist the United States Joint Terrorism Taskforce," (CV No. 1 at 10; *see also* CR No. 78 at 11), Jones's role at sentencing belies a limited scope. In fact, at sentencing, Jones presented the entire

mitigation argument on behalf of Jalloul.  (*See* CR No. 78.)  Ghatrehee's only

participation in the sentencing hearing involved asking the Court two clarifying questions

about the sentence imposed.  (*See* CR No. 78 at 29-30, 33.)

Thus, if any counsel could arguably be considered ineffective as it relates to

Jalloul's sentencing, it is Stephen Jones, not Bejan Ghatrehee.[4]  But Jalloul's Section

2255 motion alleges that Ghatrehee, not Jones, was ineffective.  (CV No. 1 at 10.)  In

doing so, Jalloul alleges a labyrinth of claims against Ghatrehee that are largely

misplaced—as they are more aptly applicable to Jones's conduct—and fail under the

applicable standard.  With this backdrop in mind, the government addresses the substance

of Jalloul's motion.

**B.      Ghatrehee had no conflict of interest, but even if he did, Jalloul
          implicitly waived such conflict, and his claim fails under the two-
          pronged *Strickland* test.**

"The Sixth Amendment right to counsel includes the right to representation that is

free from any conflict of interest."  *United States v. Culverhouse*, 507 F.3d 888, 892 (5th

Cir. 2007); *see also Palacios*, 928 F.3d at 454.  An attorney may have conflicts of interest

if he represents multiple parties with conflicting interests, or he might have a personal

interest that poses an actual conflict with the client's interests.  *See United States v. Job*,

387 F. App'x 445, 450 (5th Cir. 2010) (unpublished).  Whereas a less onerous prejudice

standard may apply to the former kind of claim, a prisoner alleging the latter—a conflict

posed by self-interest—must satisfy the prejudice standard of *Strickland*.  *Id.*; *see also*

---

[4] The government is not stating that Jones was ineffective—he was not.  It only raises this issue to
highlight Jalloul's mismatched argument.

*United States v. Goodley*, 183 F. App'x 419, 422 (5th Cir. 2006) (unpublished) ("Because the *Strickland* standard applies when, as here, the quality of representation is alleged to have been affected by the attorney's self-interest, the district court correctly determined that Goodley's claims should be evaluated under *Strickland*'s standard."). Here, Jalloul alleges a conflict posed by his counsel's self-interest, and thus he must meet both *Strickland* prongs. (CV No. 1 at 10-11.)

Moreover, the Fifth Circuit has "long held that, like the right to counsel of any kind, the right to conflict-free counsel can be waived." *United States v. Greig*, 967 F.2d 1018, 1021 (5th Cir. 1992). A defendant waives such conflict when he does so "knowingly, intelligently, and voluntarily." *Id.* That waiver need not be the product of a formal hearing. *See Sealed Appellee v. Sealed Appellant*, 900 F.3d 663, 671-72 (5th Cir. 2018) (upholding defendant's implicit waiver of his counsel's alleged conflict where no *Garcia* hearing was held, but the record reflected that the defendant knowingly, intelligently, and voluntarily waived the purported conflict). Rather, the court can infer such waiver where the record reflects that the defendant "(1) [was] aware that a conflict of interest exists; (2) realize[d] the potential hazards to his defense by continuing with such counsel under the onus of a conflict; and (3) [was] aware of his right to obtain other counsel." *Id.*

### i.     Ghatrehee had no conflict of interest.

First, Jalloul fails to establish that Ghatrehee had a conflict of interest. Jalloul alleges that Ghatrehee "had a business relationship that pre-dated Ghatrehee's representation of Jalloul." (CV No. 1 at 10.) That relationship, Jalloul alleges, involved

9

Ghatrehee paying "extensive referral fees to Jalloul (a non-attorney) for clients that Jalloul referred to Ghatrehee."  (CV No. 1 at 10.)  Jalloul contends that such referral fee "may" have violated the Texas Rules of Professional Responsibility.  (CV No. 1 at 11); *see also* (CV No. 1 at 10 ("It is arguable that this business relationship violated the professional responsibility rules prohibiting the payment of referral fees by attorneys to non-attorneys.").)  Assuming that Jalloul and Ghatrehee had such arrangement—which Jalloul notably presents no evidence to substantiate—Jalloul's use of speculative language such as "may" and "[i]t is arguable" dooms his claim because Jalloul must show an *actual* conflict of interest, not a hypothetical one.  *See United States v. Potts*, 566 F.Supp.2d 525, 532 (N.D. Tex. 2008).

Moreover, Jalloul fails to identify *any* specific ethical rule that Ghatrehee allegedly violated by entering into this supposed referral agreement with Jalloul.  In fact, Texas Disciplinary Rule of Professional Conduct 7.03(e)(2) permits a referral agreement between a lawyer and a non-lawyer in certain circumstances:

> A lawyer may refer clients to another lawyer or a nonlawyer professional pursuant to an agreement not otherwise prohibited under these Rules that provides for the other person to refer clients or customers to the lawyer, if:
>> (i) the reciprocal referral agreement is not exclusive;
>> (ii) clients are informed of the existence and nature of the agreement; and
>> (iii) the lawyer exercises independent professional judgment in making referrals.

Jalloul fails to show that his purported agreement with Ghatrehee violated this rule. Because Jalloul has not established that Ghatrehee violated any ethical rules in entering into a purported referral agreement with him, he has not established a conflict of interest and his ineffective-assistance claim should be denied.  *See United States v. Hinson*, 55

10

F.3d 632, 1995 WL 313939, at *2 (5th Cir. 1995) (affirming denial of Section 2255 motion on the basis that defense counsel had no actual conflict).[5]

> ### ii. Jalloul waived any purported conflict.

But even if Jalloul could establish that a conflict existed (he cannot), the record clearly reflects that Jalloul "knowingly, intelligently, and voluntarily" waived such conflict when he hired Ghatrehee as his attorney. Applying the three relevant factors courts consider, Jalloul "(1) [was] aware that a conflict of interest exist[ed]; (2) realize[d] the potential hazards to his defense by continuing with such counsel under the onus of a conflict; and (3) [was] aware of his right to obtain other counsel." *Sealed Appellee*, 900 F.3d at 671.

These requirements are easily satisfied. As to the first prong, Jalloul was clearly aware of any alleged conflict as the purported conflict stems from a prior relationship between Ghatrehee and Jalloul himself. Thus, Jalloul would have known of his alleged referral agreement with Ghatrehee before Jalloul hired Ghatrehee as his attorney. As to the second prong, Jalloul is a sophisticated party who can read, write, and comprehend complex issues—as evidenced by his Section 2255 submissions. He would, therefore, be able to glean if Ghatrehee's advocacy on his behalf could be tainted by any improper referral agreement between the two. And as to the third prong, Jalloul clearly understood his right to obtain other counsel as evidenced by the fact that he hired another attorney,

---

[5] Although the Fifth Circuit's decision in *Hinson* was not published, "[u]npublished opinions issued before January 1, 1996, are precedent" in this Circuit. *See* 5th Cir. R. 47.5.3; *see also Weaver v. Ingalls Shipbuilding, Inc.*, 282 F.3d 357, 359 (5th Cir. 2002) ("The fact that *Watkins* is unpublished does not alter its precedential status, because it was decided before January 1, 1996.").

Stephen Jones, before the sentencing phase of the case.  (*See* CR No. 38.)  Because

Jalloul implicitly waived any purported conflict with Ghatrehee, his ineffective-assistance

claim should be denied.  *See Sealed Appellee*, 900 F.3d at 666 (affirming denial of

Section 2255 motion on the basis that the defendant waived the purported conflict).

### iii.    Jalloul does not meet the two-pronged *Strickland* test.

Jalloul's motion fails for the additional, independent reason that he does not meet

*Strickland*'s deficient performance and prejudice requirements, as required for self-

interest conflict-of-interest claims such as this one.  *Goodley*, 183 F. App'x at 422-23.

Jalloul alleges that due to Ghatrehee's conflict—which he alleges was driven by

"Ghatrehee's desire to prevent his business relationship with Jalloul from coming to

light"—Ghatrehee failed to: "(1) investigate the claims and defenses in the case; (2)

advise Jalloul that federal law barred the government from obtaining a restitution

judgment; (3) investigate the government's theory of relevant conduct; (4) attend the

presentence investigation interview with Jalloul; (5) supplement or object to the

presentence investigation report; (6) submit a sentencing memorandum; or (7) present

mitigating evidence at sentencing, including facts to clarify Jalloul's criminal history."[6]

(CV No. 1 at 10, 12.)  These arguments fail under *Strickland*, and therefore should be

rejected.  The government addresses each in turn.

---

[6] Jalloul classifies these arguments as establishing prejudice.  (CV No. 1 at 12.)  He contends that the first
prong of *Strickland*—deficient performance—is established based on the underlying conflict itself.  (CV
No. 1 at 12.)  Not so.  A prisoner asserting a self-interest conflict-of-interest must satisfy both prongs of
*Strickland* independent from the alleged conflict itself.  *See Godley*, 183 F. App'x at 423 (applying both
prongs of *Strickland* to a self-interest conflict-of-interest claim).

      **a.**    **Restitution claims are not cognizable in Section 2255 motions, and regardless restitution orders for Title 26 tax offenses are authorized by statute.  (Responsive to Jalloul's Ground 1 and 2.)**

Jalloul first contends that Ghatrehee failed to investigate the claims and defenses regarding restitution and failed to advise Jalloul that federal law barred the government from obtaining a restitution judgment.  (CV No. 1 at 12-13.)  He argues that "[h]ad Ghatrehee conducted an investigation, he would have discovered that the government was legally barred from obtaining a restitution judgment in this case."  (CV No. 1 at 12.)  And he cites *United States v. Stout*, 32 F.3d 901, 905 (5th Cir. 1994) for the proposition that "[i]t is well-settled law that restitution is not owed for tax offenses."  (CV No. 1 at 13.)  Jalloul's argument is procedurally barred and is based on a fundamental misstatement of the law.

Initially, Jalloul's claims regarding the restitution award fail as "complaints concerning restitution may not be addressed in [Section] 2255 proceedings."  *United States v. Hatten*, 167 F.3d 884 (5th Cir. 1999).  This includes his claim that his counsel was ineffective for failing to investigate and advise Jalloul regarding the availability of a restitution order.  *See Lee v. United States*, No. 3:07-CR-0289-M (02), 2015 WL 5559398, at *4 (N.D. Tex. Sept. 1, 2015), *report and rec. adopted*, No. 3:07-CR-0289-M (02), 2015 WL 5567029 (N.D. Tex. Sept. 21, 2015) (finding claim that counsel was ineffective for failing to challenge restitution order non-cognizable in Section 2255 motion).  His claim fails on that basis.

But even if Jalloul's restitution claims were cognizable in his Section 2255 motion, they are meritless. In cases brought under Title 26, restitution is alternatively available in two instances. First, restitution can be awarded through 18 U.S.C. § 3663(a)(3), which provides that a district court "may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." *Id.* § 3663(a)(3); *United States v. Miller*, 406 F.3d 323, 330 (5th Cir. 2005). Second, restitution can be awarded as a condition of supervised release. *United States v. Campbell*, 552 F. App'x 339, 344 (5th Cir. 2014) (unpublished) (citing 18 U.S.C. § 3583(d)(3) (authorizing a sentencing court to impose "any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate")); *see also United States v. Nolen*, 523 F.3d 331, 332 (5th Cir. 2008) ("[*I*]*n the absence of an agreement by the defendant*, restitution may not be ordered for a Title 26 offense except as a condition of probation or supervised release, under 18 U.S.C. 3583(d), 3563(b)(2), and 3556.") (emphasis added)). Thus, in this case, the Court's authority to impose restitution could be found in a plea agreement *or* under the Court's authority to impose restitution as a condition of supervised release.[7]

As the Fifth Circuit noted in denying Jalloul's direct appeal, "[b]ecause Jalloul agreed [in his plea agreement] to pay restitution, the criminal monetary penalty was authorized by law." *Jalloul*, 2022 WL 4078567, at *2 (citing 18 U.S.C. § 3663(a)(3);

---

[7] Contrary to Jalloul's argument, *Stout* does not state that restitution cannot be owed for tax offenses. Rather, it states that "separate restitution order[s]" are improper for tax offenses under Title 26. *Stout*, 32 F.3d 901 at 905. However, *Stout* also notes that "[s]entencing courts are permitted to impose restitution as a condition of supervised release to the extent agreed to by the government and the defendant in a plea agreement." *Id.* at 904.

*Stout*, 32 F.3d at 905 n.5). But even if Jalloul had not agreed to pay restitution in his plea agreement, it still would have been permissible under the Court's authority to impose restitution as a condition of supervised release. *Campbell*, 552 F. App'x at 344. Here, restitution was both a term of Jalloul's plea agreement, (CR No. 27 at 4 ("The defendant fully understands that any financial obligation imposed by the Court, including a restitution order and/or the implementation of a fine; is due and payable immediately.")), and was included in the judgment as a special condition of supervised release, (CR No. 57 at 5). Thus, even if Jalloul's restitution claims were cognizable in his Section 2255 motion, Ghatrehee was not ineffective for failing to investigate restitution in this case or failing to inform Jalloul that a restitution order would be impermissible, as such investigation would be unfruitful and such advice would amount to an incorrect statement of the law.

> **b.** **Ghatrehee was not ineffective for failing to lodge a frivolous objection to the PSR's calculation of relevant conduct. (Responsive to Jalloul's Grounds 1, 3, and 5.)**

Second, Jalloul contends that Ghatrehee failed to investigate the government's theory of relevant conduct. (CV No. 1 at 12-13.) Specifically, he argues that the PSR erroneously attributed "$14,100,029.87 in relevant conduct tax loss to Jalloul" where he should have been held accountable for only a $1,432,384 loss. (CV No. 1 at 13.) He maintains that through a proper investigation, Ghatrehee would have revealed that: (1) the PSR "makes no legal showing that tax returns prepared on behalf of unrelated taxpayers are relevant conduct," (2) the government erroneously "assume[d] that all tax returns submitted via Jalloul's tax preparer number were prepared by Jalloul" rather than

15

by third-parties using Jalloul's tax preparer number, and (3) the government's methodology erroneously assumed that "Jalloul's clients were similarly situated to the average Dallas / Fort Worth taxpayer." (CV No. 1 at 13.) As support for these arguments, "Jalloul estimates that 20,000 tax returns were filed through his preparer number," (CV No. 1 at 13), rather than the 10,311 identified by the IRS. (PSR at 9.) Finally, he argues that Ghatrehee was ineffective in failing to object to the PSR's calculation of relevant conduct. (CV No. 1 at 14.)

As to his Jalloul's first argument, "[u]ncharged conduct is 'relevant conduct' and thus may be used in determining loss amount if it is part of the 'same course of conduct' or 'a common scheme or plan' as the offense of conviction." *United States v. Cooks*, 589 F.3d 173, 185 (5th Cir. 2009) (quoting USSG § 1B1.3, cmt. n.9). Indeed, the sentencing guidelines require the Court to consider all relevant conduct at sentencing. *United States v. Williams*, 610 F.3d 271, 292 (5th Cir. 2010). Here, the PSR properly held Jalloul accountable for fraudulent tax refunds filed from 2012 through 2017—the time period of Jalloul's tax scheme. (PSR at 3-4, 9.) Thus, Jalloul's argument that the PSR makes "no legal showing" of its relevant conduct determination is baseless, and Ghatrehee was not ineffective for failing to investigate a meritless argument. (CV No. 1 at 13.)

As to Jalloul's second and third claims, they fail for lack of specificity. "To establish that an attorney was ineffective for failure to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *Hall v. United States*, No. 1:17-CV-517, 2021 WL 836863 at *7 (E.D. Tex. Jan. 27, 2021), *report and rec. adopted*, No. 1:17-CV-517, 2021

16

WL 827687 (E.D. Tex. Mar. 3, 2021) (citing *United States v. Green*, 882 F.2d 999, 1003
(5th Cir. 1989), and *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005)).  "Mere
conclusory allegations in support of a claim of ineffective assistance of counsel are
insufficient to raise a constitutional issue." *Id*. (citing *Green v. Johnson*, 160 F.3d 1029,
1042 (5th Cir. 1998)). "Absent evidence in the record, a court cannot consider a habeas
petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal
court), unsupported and unsupportable by anything else contained in the record, to be of
probative evidentiary value." *Id*. (quoting *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th
Cir. 1983)).

Here, Jalloul presents *no* evidence that some of the tax returns prepared under
Jalloul's tax preparer number were in fact prepared by third parties instead of him, and
therefore he should not be held accountable for them.  (CV No. 1 at 13.)  And Jalloul
tellingly does not allege that he told Ghatrehee that his clients were not similarly situated
to the average Dallas / Fort Worth taxpayer and that Ghatrehee did nothing about it.
Instead, Jalloul makes a post-facto, unsupported allegation about his clientele that
Ghatrehee would have no way of knowing at the time.  Finally, Jalloul presents no
justification for why his counsel should have doubted the IRS when it determined that
Jalloul prepared and filed 10,311 federal tax returns between 2012 and 2017, and instead
believed that Jalloul filed nearly double that number.  (*See* CV No. 1 at 13 ("To put
numbers to this point, Jalloul estimates that 20,000 tax returns were filed through his
preparer number.").)  And Jalloul offers no facts disputing the reliability of the IRS's
calculations.  Indeed, Jalloul's argument boils down to self-serving assertions and

17

calculations without support that a reasonable lawyer would not have discovered in an

investigation.  And because an objection to relevant conduct would have been futile,

Ghatrehee was not ineffective for failing to raise it.  *See Green v. Johnson*, 160 F.3d

1029, 1037 (5th Cir. 1998).  Accordingly, these claims fail for lack of deficient

performance.

> **c.      There is no constitutional right to counsel at a PSR interview, and therefore Ghatrehee was not ineffective for not attending.  (Responsive to Jalloul's Ground 4.)**

Jalloul next objects that Ghatrehee failed to attend the presentence interview.  (CV

No. 1 at 14.)  The Fifth Circuit has held that "no right to counsel attaches at a pre-

sentence interview, as the interview is not a critical stage of the proceedings."  *United*

*States v. Bounds,* 985 F.2d 188, 194 (5th Cir. 1993), *abrogated on other grounds*,

*Edwards v. United States*, 523 U.S. 511 (1998).  It follows that Jalloul could not have

been "deprived of effective assistance where he was not entitled to assistance of counsel."

*Hott v. United States*, No. 4:16-CR-069-O, 2020 WL 7395384, at *4 (N.D. Tex. Dec. 17,

2020) (citing *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982)); *see also United States*

*v. Ewing*, 334 F. App'x 697, 697-98 (5th Cir. 2009) (unreported) (rejecting ineffective-

assistance-of-counsel claim where defendant argued that "counsel failed to advise him of

the risks of his cooperation with the [g]overnment and failed to negotiate any sort of

immunity agreement in return for his cooperation" because the right to counsel had not

yet attached, and thus, the defendant had no constitutional right to effective assistance of

counsel).  Accordingly, this argument fails.

       **d.**      **Jones presented mitigating evidence on Jalloul's behalf at sentencing, and Ghatrehee's decision not to present mitigating evidence regarding his prior assaults fails under both *Strickland* prongs. (Responsive to Jalloul's Grounds 6 and 7.)**

Finally, Jalloul argues that Ghatrehee was ineffective for not submitting a sentencing memorandum or otherwise presenting mitigating evidence to the Court. (CV No. 1 at 14-15.) In doing so, Jalloul contends that Ghatrehee left the Court "unaware of mitigating evidence regarding the domestic assaults" listed in his PSR and "other mitigating[] evidence that would have likely softened the Court['s] view of Jalloul." (CV No. 1 at 14-15.) But Jalloul's counsel Stephen Jones *did* present mitigating evidence about Jalloul's life to the Court at sentencing. Thus, that claim lacks merit. And Jalloul's claim that Ghatrehee was ineffective for not presenting mitigating evidence about his assaults fails under both *Strickland* prongs.

***First***, addressing Jalloul's prior assaults. Jalloul has four assaults listed in his PSR. (PSR at 13, 15-17.) Jalloul notes that the Court "expressly factored the assaults into its sentence," and that Ghatrehee performed deficiently by failing to present mitigating evidence about them. (CV No. 1 at 15.) At sentencing, the Court noted that Jalloul's prior assaults plus his new charge for PPP fraud—which he was indicted for while on release for the instant offense, (*see supra* n.3)—made clear that a high sentence was necessary "for the safety of the community" and to "promote respect for the law." (CR No. 78 at 26.)

In his Section 2255 motion, Jalloul "does not make any excuse for his actions and continues to accept responsibility," (CV No. 1 at 15), for one of the assaults in which Jalloul "picked up a liquor bottle and struck" his common-law wife, Fatu Sirleaf,

"multiple times" on her head "knocking her to the floor" and stomped on her head with his foot. (PSR at 13.) As to the other three assaults, Jalloul contends that they "were inextricably intertwined with substance abuse and mental illness o[n] the part of Jalloul's ex-wife," Racheita Jalloul. (CV No. 1 at 15.) But notably, Jalloul does not contest *any* of the facts regarding those assaults as laid out in the PSR. Those facts include on one occasion, Jalloul punching his ex-wife Racheita Jalloul "in the mouth, busting her lip." (PSR at 15-16.) And on another occasion, law enforcement observed a "whelp under Ms. Jalloul's right eye and a red mark across her right check" consistent with her story that Steven Jalloul had "punched her twice in the head." (PSR at 16.) And on a third occasion, the PSR describes officers observing "bruising and swelling around [Racheita Jalloul's] left eye as well as two bite marks on her left arm" following a fight with Steven Jalloul. (PSR at 17.) Regardless of whether Racheita Jalloul was battling substance abuse, mental illness, or both, at the time of these assaults, the PSR makes clear—and Jalloul does not contest—that Steven Jalloul's conduct was dangerous and violent. Thus, Jalloul's statement in his Section 2255 motion that he "did not have culpability in these incidents" shows a staggering lack of accountability. (CV No. 1 at 15.)

At *Strickland* step one, Jalloul's claim fails for lack of deficient performance as Ghatrehee's decision not to bring up Jalloul's domestic violence history came down to a matter of strategy. "[E]ven the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 690. "Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." *Id.* at 693. Here, there was a serious risk that the Court may not have viewed

20

favorably Jalloul's attempts to minimize his involvement in the assaults by blaming the victim of domestic violence incidents.  Because any it-was-her-fault evidence is inherently double-edged, Ghatrehee's decision not to raise it was objectively reasonable. *See Kitchens v. Johnson*, 190 F.3d 698, 703 (5th Cir. 1999).

And at *Strickland* step two, the claim fails for lack of prejudice as there is nothing in the record to reflect that had the Court known about Racheita Jalloul's mental state and substance abuse, the Court would have attributed less culpability to Jalloul and therefore rendered a lighter sentence.  That is especially true where the Court was concerned about Jalloul's new federal offense—committed while he was on pretrial release for the instant offense—which had nothing to do with Jalloul's domestic violence history.  (CR No. 78 at 26.)  Accordingly, this claim also fails for lack of prejudice.  *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice"); *United States v. Grammas*, 376 F.3d 433, 438 (5th Cir. 2004); *see also Lincks v. United States*, No. 3:17-CR-00017-B (18), 2021 WL 4395816, at *5 (N.D. Tex. June 8, 2021), *report and rec. adopted*, No. 3:20-CV-1603-B (BT), 2021 WL 3828154 (N.D. Tex. Aug. 27, 2021)).

***Second***, turning to Jalloul's broader argument that Ghatrehee did not present mitigation evidence in a sentencing memorandum.  At the outset, Jalloul does not allege *what* should have been offered in a sentencing memorandum—rendering his claim fatally vague and conclusory.  *See United States v. Woods*, 870 F.2d 285, 287 (5th Cir. 1989) ("[M]ere conclusory allegations on a critical issue are insufficient to raise a constitutional issue in a Section 2255 proceeding."); *United States v. Opiyo*, No. 4:10-CR-168-A-1,

21

2013 WL 4804193, at *4 (N.D. Tex. Sept. 6, 2013) ("Movant fails to provide any facts at all that could demonstrate that his attorney's investigation and conduct in the adversarial process were anything other than objectively reasonable. Therefore, movant's conclusory allegation cannot satisfy the Strickland standard for ineffective assistance of counsel.")

Even so, Jalloul's claim fails as his second counsel, Stephen Jones, *did* present a lengthy statement at sentencing in which he discussed mitigating evidence and asked the Court to grant Jalloul mercy. (CR No. 78 at 10-19.) For example, Jones referenced Jalloul's challenging upbringing in war-torn Lebanon and the "absence of consistent love and nurturing" he received throughout his life. (CR No. 78 at 10-19.) Jones also noted that Jalloul had been providing the government with helpful information—a fact the government acknowledged. (CR No. 78 at 10-19, 22.) Indeed, Jalloul notes in his Section 2255 motion that Jones spoke "eloquently on Jalloul's behalf at sentencing." (CV No. 1 at 10.) And the Court commended Jones's presentation, noting that he made "a very moving speech about mercy" that was "really well done." (CR No. 78 at 24, 26.) The fact that these mitigation arguments were made by Jones, rather than Ghatrehee, and that they were made orally, rather than in a sentencing memorandum is of no import. The Court heard the arguments and could consider them in crafting a sentence. Therefore, because Jalloul's counsel *did* present mitigating arguments to the Court, his argument lacks merit.

4.     **CONCLUSION**

For these reasons, the Court should deny Jalloul's Section 2255 motion.

Respectfully submitted,

Leigha Simonton
United States Attorney

*/s/ Daniel Z. Gordon*
Daniel Z. Gordon
Assistant United States Attorney
D.C. Bar No. 1736506
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: (214) 659-8794
daniel.gordon@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on May 21, 2024, I filed this response with the Clerk of Court for the

U.S. District Court, Northern District of Texas.  I also certify that a copy of this response

was served on Steven Jalloul, Register Number 58485-177, Sandstone FCI, P.O. Box

1000, Sandstone, Minnesota 55072, by certified mail, return receipt requested.

*/s/ Daniel Z. Gordon*
Daniel Z. Gordon
Assistant United States Attorney